PHILLIP A. TALBERT
United States Attorney
CAMERON L. DESMOND
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:21-CR-00104-TLN |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| CHARLES CARTER, | |
| Defendant. | |

### I.   INTRODUCTION

**A.   Scope of Agreement**

The Superseding Information in this case charges the defendant with a violation of 21 U.S.C. §§ 846 and 841(a)(1) – conspiracy to distribute and possess with intent to distribute at least 500 grams of cocaine and at least 100 grams of heroin. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities that may not have been charged in the Superseding Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to the sole count of the Superseding Information, which charges a violation of 21 U.S.C. §§ 846 and 841(a)(1) – conspiracy to distribute and possess with intent to distribute at least 500 grams of cocaine and at least 100 grams of heroin. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Sentencing Recommendation

The defendant and his counsel may recommend any sentence they deem appropriate, as limited by the statutory mandatory minimum.

### C. Special Assessment

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary, by participating in the Inmate Financial Responsibility Program.

### D. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on the count to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections

based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.   THE GOVERNMENT'S OBLIGATIONS

#### A.   Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts against this defendant in the pending Indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement) and VII.B (Waiver of Appeal) herein.

#### B.   Recommendations

##### 1.   Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, including the application of the mandatory statutory minimum term, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

##### 2.   Acceptance of responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the

pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, to prove that the defendant committed the crime of conspiracy to distribute and possess with intent to distribute at least 500 grams of a mixture and substance containing cocaine and at least 100 grams of a mixture and substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, the government would have to prove beyond a reasonable doubt the following elements:

1. Beginning on or about no later than February 19, 2019, and continuing through on or about May 19, 2021, there was an agreement between two or more persons to distribute and possess with intent to distribute at least 500 grams of a mixture and substance containing cocaine and at least 100 grams of a mixture and substance containing heroin; and

2. the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The defendant fully understands the nature and elements of the crime charged in the Superseding Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum penalty

The maximum sentence the Court can impose on the count to which he is pleading guilty is 40

years, a $5,000,000 fine, a term of supervised release of at least 4 years and up to life, and a special assessment of $100.  The charge to which defendant is pleading guilty carries a five-year mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. § 3553(e).  In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B.   Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three years additional imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to

/ / /

testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in all other cases, this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the count to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

### VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

## IX.  APPROVALS AND SIGNATURES

### A.  Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 8/13/2022

MICHAEL LONG
Counsel for Defendant

### B.  Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 8/13/2022

CHARLES CARTER, Defendant

### C.  Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: 8/16/2022

PHILLIP A. TALBERT
United States Attorney

By: CAMERON L. DESMOND
Assistant United States Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Between February 19, 2019, and March 20, 2019, the Drug Enforcement Administration conducted a Title III wiretap on the telephone belonging to Maurice BRYANT. During the wiretap, the defendant, Charles CARTER, was intercepted numerous times discussing drug transactions with BRYANT. During the 30 days of intercepts, BRYANT fronted cocaine to CARTER for distribution; CARTER obtained tar heroin from multiple sources on behalf of BRYANT; CARTER middle-manned kilogram-quantity cocaine transactions for BRYANT; and CARTER discussed with BRYANT his plan rob a separate heroin source of multiple kilograms of heroin. During the 30 days of intercepts, CARTER distributed one kilogram of cocaine to BRYANT and obtained 170 grams cocaine and at least 100 grams of tar heroin from BRYANT for distribution to others. The intercepted calls between CARTER and BRYANT are summarized below.

On February 22, 2019, BRYANT sent multiple text messages to CARTER saying, "Hit me." CARTER then called BRYANT, who asked CARTER if their "boy" had gotten "any more of that dirt." "Dirt" is common slang for heroin. CARTER indicated he believed so, and BRYANT asked if it was "the cheap" or "the same one." BRYANT said his "boy" (*i.e.*, source) had got some for "7-50," *i.e.*, $750 an ounce for tar heroin. CARTER said he would let BRYANT know by the end of the night "about the money" he owed BRYANT.

On February 25, 2019, BRYANT told CARTER that he needed to pick up the money ("grab that") CARTER owed him because BRYANT's source ("my boy") was on his way. CARTER responded that he had "eleven" (*i.e.*, $1,100 or $11,000) of the drug money he owed BRYANT.

On March 1, 2019, BRYANT asked CARTER if he still needed or wanted "that," and CARTER said he definitely did. BRYANT then asked what CARTER needed and said it was either going to be "7 or 72" (*i.e.*, $700 or $720 an ounce of heroin). CARTER said that was good and that when he got back from San Francisco the next day, he would call BRYANT.

///

On March 3, 2019, BRYANT sent CARTER a text: "Hit me dog." CARTER called BRYANT and said that he was "going to the bank tomorrow" and that he was "trying to put that shit together . . . I'm out here in the streets." In these calls, CARTER was telling BRYANT that he was going to collect the money (go to the "bank") he owed BRYANT for additional drugs they discussed earlier and that he was "out in the streets" selling drugs to get the money he owed BRYANT.

On March 4, 2019, CARTER called BRYANT and asked BRYANT to bring him six ounces of cocaine and asked BRYANT how much he wanted for an ounce ("Bring me six of them . . . let me know how much you want for them.") BRYANT later texted CARTER: "825 for 6 4950," to which CARTER immediately responded: "Ok." BRYANT then texted: "On my way."

Later that day, CARTER asked BRYANT, "you don't want to give me the whole nina? I was going to grab some skittles, but, you know what I mean?" "Nina" is code for nine ounces of cocaine base. "Skittles" is code for MDMA or methamphetamine pills. BRYANT asked, "You got all that other?" CARTER responded, "I got your forty-nine fifty right here . . . I still got to collect that other, you feel me? It's good . . . I just didn't want to hang onto this chicken, you feel . . . but soon as I finished collecting yours it's right off the top." BRYANT said he needed that and would be there in a minute.

On March 7, 2019, CARTER sent BRYANT a text: "U up." BRYANT responded, "W up." CARTER then texted: "Everybody asleep I got yo 18 pull up." BRYANT responded: "Hit me." BRYANT then called CARTER and said he was about to pull up to collect the money ($1,800 or $18,000).

On March 13, 2019, BRYANT asked CARTER "what are you holding?" CARTER told BRYANT he had been out of town but was back and "put together 17, like 18 with the shoes and shit" and asked BRYANT if he wanted to meet him. BRYANT said that they could meet in less than an hour.

On March 14, 2019, CARTER told BRYANT about an alternate source for cocaine who was selling kilograms for $25,000. BRYANT asked if they were good, and CARTER responded, "They are, with a number like 25 or under, people would be telling him to get more." BRYANT said, "I just got four the other day for someone" and "I got them for 27 a piece the other day, that was for four of them, and one of them wanted 28." CARTER said he could "hook it up today . . . I only put a band on them . . . it's here already." BRYANT said, "I am sure the numbers are like that, you just need a good plug."

BRYANT then said that he needed "Two pairs. Two sixes and two sevens. Two of the same, two of the same, four altogether."

On March 16, 2019, CARTER told BRYANT about his plans to rob a heroin source of three kilograms of heroin that he could then sell for $25,000 per kilogram. He explained to BRYANT that he then planned to move, to avoid retaliation from this heroin source.

I, Charles Carter, being fully informed of my rights, adopt this factual basis as my own true statement. I admit that I agreed and conspired with Maurice BRYANT to distribute and possess with intent to distribute at least 500 grams of cocaine and 100 grams of heroin and that I and my co-conspirator engaged in the conduct described above in furtherance of that conspiracy. I also admit that during the course of the wiretap, and in furtherance of the conspiracy, I distributed one kilogram of cocaine to BRYANT and obtained 170 grams cocaine and at least 100 grams of tar heroin from BRYANT for distribution to others.

Dated: 8/13/2022

CHARLES CARTER, Defendant